UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHAD R., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-04999-TAB-TWP |
| | ) |
| ANDREW M. SAUL Commissioner of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.     Introduction**

Plaintiff Chad R. appeals the Social Security Administration's denial of his application for disability insurance benefits.  Plaintiff argues that the Administrative Law Judge erred by finding that Plaintiff had a residual functional capacity to perform sedentary work.  Plaintiff claims the ALJ failed to properly evaluate symptoms of pain.  Plaintiff also argues the ALJ failed to properly account for his limitations in adapting and managing himself.  As explained below, the ALJ's decision is supported by substantial evidence, and any omissions amount to nothing more than harmless error.  Accordingly, Plaintiff's request for remand [Filing No. 15] is denied.

**II.     Background**

The SSA denied Plaintiff's application for disability and disability insurance benefits initially and upon reconsideration.  Following a hearing, the ALJ determined that Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled.  First, the ALJ noted that Plaintiff last met the insured status requirements of the Social

1

Security Act on Dec. 31, 2017.  Next, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period for which he was seeking disability benefits.  At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, obesity, chronic pain syndrome, and his post-spinal surgery status.  The ALJ found that these medically determinable impairments significantly limited Plaintiff's ability to perform basic work activities as required by SSRs 85-28 and 96-3p.  Additionally, the ALJ noted that, while the record also included documentation of the medically determinable impairment of depression, only a mild limitation was established in connection with that condition.  Thus, it was not severe.  [Filing No. 13-2, at ECF p. 20.]

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Before reaching step four, the ALJ determined Plaintiff's RFC, or his remaining ability to function despite his limitations.  The ALJ concluded that Plaintiff had the RFC to perform "sedentary work" as defined in 20 C.F.R. § 404.1567(a), with the following additional limitations:

> [Plaintiff] could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  He could occasionally balance and stoop, but never kneel crouch and crawl.  The claimant could tolerate occasional exposure to or occasionally work around vibration and hazards such as moving machinery or unprotected heights with no ambulation on uneven terrains.

[Filing No. 13-2, at ECF p. 21.]

Based on this RFC finding, Plaintiff's past relevant work as a millwright and welder, and the testimony of the vocational expert, the ALJ concluded at step four that Plaintiff was unable to perform any past relevant work.  Consequently, the ALJ proceeded to step five and found jobs that existed in significant numbers that Plaintiff could have performed considering Plaintiff's

age, education, work experience, and RFC.  The ALJ noted four such jobs in the decision: circuit board screener, eyewear assembler, electrical press operator, and semiconductor bonder.  The ALJ accordingly concluded that Plaintiff was not disabled.

### III.    Discussion

Plaintiff argues that the ALJ committed reversible error by (1) finding that Plaintiff had a residual functional capacity to perform sedentary work despite a contrary opinion from a treating physician, (2) failing to properly evaluate Plaintiff's symptoms of pain, and (3) failing to properly analyze limitations for Plaintiff in adapting and managing himself and not properly accounting for those limitations in the RFC.  [Filing No. 15, at ECF p. 18.]

The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings … shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

### A.    Erroneous RFC determination

Plaintiff first argues that the ALJ erred by finding an RFC permitting Plaintiff to engage in sedentary work.  [Filing No. 15, at ECF p. 20.]  Plaintiff claims the ALJ did not properly consider the opinion of treating physician Dr. Diane Zaragoza and its supporting evidence.  [Filing No. 15, at ECF p. 20.]  He also insists the ALJ did not build a logical bridge between the

evidence and her decision to discount Dr. Zaragoza's opinions. [Filing No. 15, at ECF p. 28.]

Plaintiff filed his claim for disability benefits on July 14, 2016. [Filing No. 13-3, at ECF p. 16.] Since he filed before March 27, 2017, the applicable treating-physician rule provides that "a treating doctor's opinion generally is entitled to controlling weight if it is consistent with the record." *Hall v. Berryhill*, 906 F.3d 640, 643 (7th Cir. 2018). However, Dr. Zaragoza's opinion was not consistent with the record. In a letter dated May 6, 2015, Dr. Zaragoza deemed Plaintiff "disabled and unable to work." [Filing No. 13-8, at ECF p. 78.] In contrast, Dr. Ashok Jilhewar (whom the ALJ identified as an "impartial" medical expert) testified that Plaintiff would have been capable of sedentary work on a sustained basis during the relevant period. [Filing No. 13-3, at ECF p. 22.] When a treating physician's opinion is at odds with other doctors' opinions, it is not consistent with the record. *See Hall*, 906 F.3d at 643. Dr. Zaragoza's opinion was at odds with that of Dr. Jilhewar as well as opinions of consultants at the state agency level who found Plaintiff capable of sedentary work. [Filing No. 13-3, at ECF p. 22.] Therefore, Dr. Zaragoza's opinion was inconsistent with the record and, as such, not entitled to controlling weight.

Nonetheless, when an ALJ declines to give controlling weight to a treating physician's opinion, "an ALJ must offer 'good reasons' for doing so, after having considered: (1) whether the physician examined the claimant, (2) whether the physician treated the claimant, and if so, the duration of overall treatment and the thoroughness and frequency of examinations, (3) whether other medical evidence supports the physician's opinion, (4) whether the physician's opinion is consistent with the record, and (5) whether the opinion relates to the physician's specialty." *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). An ALJ is not required to discuss each of the above factors. *See Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008) (affirming the ALJ's discussion of two factors).

4

In this case, the ALJ gave seven reasons for not giving controlling weight to Dr. Zaragoza's assessment of Plaintiff's functional limitations: (1) that opinions deeming Plaintiff unable to work were not medical opinions; (2) that an April 2018 questionnaire Dr. Zaragoza completed was prepared after the last-insured date; (3) that the treatment notes associated with the questionnaire included no physical exam findings; (4) that the notes do not indicate an exam took place; (5) that Dr. Zaragoza's view was based on subjective complaints rather than clinical findings; (6) that the May 2015 letter lacks a function-by-function analysis; and (7) that the letter appeared to have been prepared for purposes of child support. [Filing No. 13-3, at ECF p. 23.]

At least three of the ALJ's stated explanations amount to good reasons for her to discount the treating physician's opinion. First, doctor's statements that a claimant is "disabled" or "unable to work" do not qualify as medical opinions because they are dispositive of the case. 20 C.F.R. § 404.1527(d)(1). Thus, the 2015 appraisal of Plaintiff as "disabled and unable to work" was not a medical opinion. Likewise, on the 2018 questionnaire, Dr. Zaragoza checked a box next to the word "No" for the question of whether Plaintiff was capable of performing sedentary work. [Filing No. 13-10, at ECF p. 48.] These opinions constituted opinions on issues reserved to the SSA. The SSA "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3).

Second, the ALJ found that Dr. Zaragoza's opinion rested on Plaintiff's subjective complaints of pain and symptoms. "And where a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it." *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013). As discussed below, the Court does not find that the ALJ's credibility assessment of Plaintiff's complaints was patently wrong; therefore, the ALJ's decision to discount Dr. Zaragoza's opinion for relying on Plaintiff's complaints was not erroneous. *See id.*

5

(finding that, because ALJ not patently wrong to find claimant's complaints not credible, ALJ properly deemphasized treating physician's report relying heavily on claimant's statements).

The 2015 letter provides a third acceptable reason for the ALJ to decline to give controlling weight to Dr. Zaragoza's opinion. This letter proposed that Plaintiff continue to pay child support in an annual lump sum, suggesting the letter arose as friendly advocacy for the patient, rather than objective medical analysis. [Filing No. 13-8, at ECF p. 77.] A treating physician's opinion may "be unreliable if the doctor is sympathetic with the patient" and too quickly finds disability. *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (internal quotation marks and brackets omitted). "We must keep in mind the biases that a treating physician may bring to the disability evaluation. The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) (internal quotation marks omitted).

Plaintiff also argues that the ALJ failed to confront evidence supporting Dr. Zaragoza's opinion. Plaintiff points to various findings of Dr. Zaragoza, an April 2015 spinal MRI, a physical examination on Nov. 11, 2015, a consultative exam with Dr. Amanda Stram on Sept. 16, 2016, and a portion of Dr. Jilhewar's testimony as sources of alleged failures to confront evidence supporting the opinion of the treating physician. [Filing No. 15, at ECF p. 25-28].

However, the ALJ acknowledged numerous components of the record supporting Dr. Zaragoza's opinion. The ALJ cited records from Dr. Zaragoza observing Plaintiff walking with a cane and plagued by tenderness of the spine. [Filing No. 13-2, at ECF p. 21.] The ALJ mentioned that the April 2015 imaging showed "degenerative changes" in the spine. [Filing No. 13-2, at ECF p. 21.] While the ALJ did not address the exam performed by physician assistant Jill Eleftheri on Nov. 11, 2015, two of the reported findings on that date were back pain and

6

abnormal gait. [Filing No. 13-10, at ECF p. 5-6.] The ALJ did mention an Eleftheri report from Dec. 15, 2015, noting an abnormal gait and reported back pain. [Filing No. 13-2, at ECF p. 21.] The ALJ addressed the 2016 consultative exam with Dr. Stram, noting Plaintiff felt "significant pain" at that visit and could not walk without a cane. [Filing No. 13-2, at ECF p. 22.] Moreover, the ALJ listed numerous pains and limitations Plaintiff reported that would have supported Dr. Zaragoza's opinion. [Filing No. 13-2, at ECF p. 21.] The ALJ's overall opinion establishes that she confronted and considered evidence supporting Dr. Zaragoza's opinion, decided to give it minimal weight, and explained why she made her decisions in determining the RFC.

The ALJ was not required to address every piece of contrary evidence. An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, as long as the ALJ "minimally articulates" reasons for crediting or rejecting evidence of disability. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). An ALJ "may not ignore entire lines of contrary evidence" but also "need not mention every snippet of evidence" in the record. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). In this case, the ALJ more than satisfied her burden of minimal articulation. On appeal, Plaintiff has picked out specific pieces of the reports of Drs. Zaragoza and Stram and contends that the ALJ did not cite those precise pieces directly. But the ALJ need not cite every snippet of evidence. Plaintiff identifies no line of evidence that the ALJ entirely ignored.

As a result, the only remaining question is whether the RFC assessment was supported by substantial evidence. The ALJ assigned great weight to the opinions of state agency consultants who reviewed Plaintiff's medical records in 2016 and 2017 and found him capable of sedentary work. [Filing No. 13-3, at ECF p. 22.] In addition, the impartial medical expert testified that

Plaintiff remained capable of sedentary work during the relevant period. [Filing No. 13-3, at ECF p. 22.] Therefore, substantial evidence supported an RFC for sedentary work.

### B. Improper evaluation of pain

Plaintiff next contends that the ALJ failed to properly evaluate his symptoms of pain, alleging that she "overemphasized" activities of daily living in determining that his pain was not disabling. [Filing No. 15, at ECF p. 29.] Plaintiff asserts the ALJ erroneously "downplayed" Plaintiff's statements about his pain. [Filing No. 15, at ECF p. 31.] Plaintiff alleges that the ALJ did not address the pain medication Plaintiff used. [Filing No. 15, at ECF p. 31.] He argues that she incorrectly stated that his back pain was effectively treated in 2015 with medication. [Filing No. 15, at ECF p. 31.] Plaintiff accuses the ALJ of mischaracterizing the record by stating that, after spinal surgery, his pain was effectively treated. [Filing No. 15, at ECF p. 33.] He also insists that, due to the alleged mischaracterization of post-surgery pain by the ALJ, "her analysis regarding the credibility of Plaintiff's symptoms was flawed." [Filing No. 15, at ECF p. 33.]

The ALJ must consider a disability claimant's complaints of pain or other symptoms alongside objective medical evidence of pain or other symptoms. 20 C.F.R. § 404.1529. As noted by the Commissioner, assessing subjective complaints of pain necessarily requires a credibility determination, and "an ALJ's credibility determination may only be overturned if it is patently wrong," so long as the ALJ took steps "to adequately explain his or her credibility finding by discussing specific reasons" supported by the record. *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (internal citations and quotation marks omitted).

Contrary to Plaintiff's assertion, the ALJ did not cherry-pick facts from the record supporting her findings. Instead, the ALJ specifically stated in her opinion that she considered all symptoms and the extent to which they could reasonably be accepted as consistent with

8

objective medical evidence. [Filing No. 13-3, at ECF p. 21.] The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. [Filing No. 13-3, at ECF p. 22.] The ALJ summarized the symptoms Plaintiff reported, in particular his assertions of back, knee, shoulder, buttocks, and leg pain, and the limitations he claimed as a result of his impairments, notably trouble standing, lifting, bending, squatting, reaching, walking, sitting, kneeling, and climbing stairs. [Filing No. 13-3, at ECF p. 21.] After discussing reported symptoms and the medical evidence in the record, she found that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence" and determined that his testimony regarding the severity or frequency of his symptoms was not supported by the probative evidence. [Filing No. 13-3, at ECF p. 22-23.]

     These determinations were supported by evidence in the medical record indicating that Plaintiff exhibited normal reflexes and no sensory defects or atrophy during a December 2015 examination. In addition, the results of a magnetic resonance imaging test on his spine at that time were normal. [Filing No. 13-3, at ECF p. 21.] The ALJ also assigned great weight to the opinions of state agency consultants and an independent medical expert who agreed Plaintiff would have been capable of sedentary work prior to Dec. 31, 2017, his last date insured. [Filing No. 13-3, at ECF p. 22.] Also, though evidence in the record conflicts with Plaintiff's claims of disabling pain, the ALJ included in her analysis the objective medical evidence supporting Plaintiff's reported symptoms such as a September 2016 exam where Plaintiff was unable to sit or stand upright and could not walk without a cane. [Filing No. 13-3, at ECF p. 22.] Moreover, the ALJ did not totally discount Plaintiff's testimony regarding how his pain affected his ability to perform certain activities, as shown by the ALJ's decision to limit Plaintiff's range of work to

sedentary when assessing his RFC. [Filing No. 13-3, at ECF p. 21.] The ALJ also referenced, and assigned partial weight to, the third-party function report from Plaintiff's wife in which she reported he struggled to bend, stand, and walk, among other issues. [Filing No. 13-3, at ECF p. 23.] Ultimately, the ALJ provided sufficient reasons for finding that Plaintiff's allegations were not fully credible and adequately explained her findings with evidence supported by the record.

Plaintiff's argument that the ALJ overemphasized his daily living activities misses the mark. The ALJ's opinion did not rely on those daily living activities at all in evaluating Plaintiff's alleged pain and symptoms. [Filing No. 13-3, at ECF p. 21-23.] The ALJ discussed Plaintiff's daily living activities at step two when evaluating mental limitations, but the ALJ did not discuss Plaintiff's daily living activities at step four when considering pain and physical limitations for purposes of determining the RFC. [Filing No. 13-3, at ECF p. 20.] However, it would not have been inappropriate for the ALJ to consider daily activities in evaluating subjective complaints of pain. *See* 20 C.F.R. § 404.1529(c); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).

While Plaintiff claims that the ALJ did not address how Plaintiff's use of pain medication corroborated his testimony, the ALJ twice referenced Plaintiff's use of pain medication. [Filing No. 13-3, at ECF p. 21, 23.] Plaintiff takes issue with the following statement by the ALJ: "In 2015, the claimant's chronic back pain was effectively treated with medication." [Filing No. 13-3, at ECF p. 21.] Plaintiff is correct that the document to which the ALJ cited does not explicitly state that his pain was "effectively treated." [Filing No. 13-8, at ECF p. 34.] However, doctor's notes from the cited portion of the record state that Plaintiff felt "white tablets of hydrocodone do not work compared to yellow ones." [Filing No. 13-8, at ECF p. 34.] The clear implication is that the yellow tablets of the pain medication were effective. The ALJ also cited to a record of a

10

pre-surgery hospital visit on Dec. 15, 2015, when Community Health Network documented that Plaintiff reported finding 70% relief for his back pain "very good" relief. [Filing No. 13-11, at ECF p. 27.] In addition, Plaintiff accuses the ALJ of mischaracterizing the record regarding the effectiveness of pain medication following Plaintiff's spinal surgery on Jan. 4, 2016. [Filing No. 15, at ECF p. 33.] The ALJ initially noted that Plaintiff continued to report chronic back pain after the surgery. [Filing No. 13-3, at ECF p. 22.] The ALJ then asserted that Plaintiff's "pain was effectively managed" with pain management and physical therapy. [Filing No. 13-3, at ECF p. 22]. Again, Plaintiff is correct that the exhibit to which the ALJ cited does not contain an explicit statement that the pain was "effectively" managed. [Filing No. 13-9.] However, even if this characterization by the ALJ was erroneous, it was harmless error, as substantial evidence exists in the form of expert medical opinion to support her decision to discount the credibility of Plaintiff's statements regarding his pain and symptoms.

Plaintiff points to several other alleged improper omissions from the ALJ's opinion. "But an ALJ is not required to mention every piece of evidence." *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020) (internal quotation marks omitted). The ALJ's findings in relation to pain and symptoms were supported by substantial evidence, and she built a sufficient bridge between the evidence and her conclusion. The ALJ's credibility assessment was not patently wrong.

### C. Adaptation limitations overlooked

Plaintiff claims the ALJ failed to properly analyze limitations for Plaintiff in adapting and managing himself and to properly account for those limitations in the RFC. [Filing No. 15, at ECF p. 33.] As noted above, the ALJ found that Plaintiff suffered from the medically determinable impairment of depression, and to determine whether the impairment was severe the ALJ looked to the four areas of mental functioning known as the "paragraph B" criteria. [Filing

11

No. 13-3, at ECF p. 19.]   Plaintiff had a mild limitation in understanding, remembering, or applying information. [Filing No. 13-3, at ECF p. 19.] Plaintiff had a mild limitation when interacting with others. [Filing No. 13-3, at ECF p. 19.] The ALJ also found a mild limitation in concentrating, persisting, or maintaining pace. [Filing No. 13-3, at ECF p. 19.] The fourth and final broad functional area in "paragraph B" is adapting or managing oneself. Plaintiff reported that he handles stress well, has normal mood, and is able to manage his finances and personal care. Accordingly, the ALJ found him only mildly limited in the final criterion. [Filing No. 13-3, at ECF p. 20.] Due to Plaintiff's mild limitations within the "paragraph B" criteria, the ALJ determined his mental impairment of depression was not severe. [Filing No. 13-3, at ECF p. 20.]

Plaintiff argues the ALJ failed to build a logical bridge between the evidence and her conclusion that Plaintiff suffered only mild limitations under the fourth criterion. [Filing No. 15, at ECF p. 33.] Specifically, Plaintiff claims the ALJ mischaracterized the record regarding his personal care as attested to in his function report. [Filing No. 15, at ECF p. 34.] Plaintiff argues that his sufficient hygiene is due only to spousal aid and that a supposed inability to fulfill basic hygiene merited inclusion in the RFC. [Filing No. 15, at ECF p. 34.]

However, the ALJ's statement that Plaintiff reported an ability to "maintain his personal care" is not a mischaracterization of the record. [Filing No. 13-3, at ECF p. 20.] In his function report, Plaintiff reported that he could use the toilet on his own, feed himself, microwave meals for himself, shave on his own, and get along without reminders about personal care. [Filing No. 13-7, at ECF p. 37-38.] Therefore, the ALJ's statement is supported by substantial evidence. She did not mention that Plaintiff also reported a need for his wife's assistance in washing his legs and feet and in getting dressed. [Filing No. 13-7, at ECF p. 37.] However, when rendering a decision, an ALJ "need not provide a complete written evaluation of every piece of testimony

12

and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

Plaintiff also cites his wife's third-party function report as supporting evidence for his contention that he requires aid to manage himself. [Filing No. 15, at ECF p. 34.] In evaluating the fourth area of mental functioning, the ALJ did not specifically mention this report; however, the ALJ did discuss it in another section of her decision. [Filing No. 13-3, at ECF p. 20, 23.] If the spouse's report constituted a separate line of evidence regarding Plaintiff's ability to adapt and manage himself, omission in the "paragraph B" discussion would be error. "An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). ALJs cannot ignore a line of evidence undermining the conclusions they made. *Arnett*, 676 F.3d at 592.

But by not citing the wife's report in evaluating Plaintiff's personal hygiene, the ALJ did not ignore a line of evidence. In *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), the court "held that the ALJ was not required to discuss the claimant's wife's testimony if the claimant's testimony and the two were essentially the same." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005). Plaintiff stresses that his wife's report on his personal hygiene "confirmed" his own report and added that she trims the hair on Plaintiff's head, which is nearly bald. [Filing No. 15, at ECF p. 34.] Given that the substance of the report from Plaintiff's wife was essentially the same as Plaintiff's own function report, it did not amount to a separate line of evidence, and the ALJ was not required to discuss it.

Finally, the ALJ did not include in the RFC any explicit limitations related to Plaintiff's personal hygiene. [Filing No. 13-2, at ECF p. 21.] For the reasons stated above, the ALJ did not err in evaluating Plaintiff's aptitude for adapting and managing himself. Plaintiff's claim that the RFC should have accounted for mild limitation in adapting and managing himself represents to

some extent an invitation for this Court to reweigh the evidence, which it cannot do. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). The ALJ considered and took into account Plaintiff's non-severe mental impairment, explaining that her RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." [Filing No. 13-2, at ECF p. 20.] In any event, Plaintiff does not fully develop this challenge to the RFC. He does not explain what additional restrictions could have been placed in the RFC to address mild limitation in adapting and managing himself. Nor does he explain how the ALJ's RFC assessment is incompatible with his limitations in adapting and managing himself. It is not apparent from Plaintiff's argument or from the record how any issues with hygiene impaired his ability to work beyond what restrictions were included in the RFC, so there is no reversible error.

### IV.   Conclusion

For the reasons stated above, the Court denies Plaintiff's request for reversal or remand. [Filing No. 15.] The Commissioner's decision is affirmed.

Date:  7/29/2020

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email